```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                    SOUTHERN DIVISION AT PIKEVILLE
```

| | |
|---|---|
| SHERRY L. HELTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. |
| v. ) | 7:18-cv-008-JMH |
| ) | |
| NANCY C. BERRYHILL, ) | **MEMORANDUM OPINION** |
| ACTING COMMISSIONER OF SOCIAL ) | **AND ORDER** |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

\*\*\*

Plaintiff Sherry Helton brings this matter under 42 U.S.C. § 405(g) seeking judicial review of an administrative decision of the Acting Commissioner of Social Security. The Court, having reviewed the record and the cross-motions for summary judgment filed by the parties, will **AFFIRM** the Commissioner's decision as no legal error occurred and the decision is supported by substantial evidence.

## I. Standard for Determining Disability

Under the Social Security Act, a disability is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining disability, an Administrative Law Judge ("ALJ") uses a five-step analysis. *See*

*Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform past relevant work; and, if necessary, Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *Id.*; *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## II. Procedural and Factual History

Helton filed for disability insurance benefits (DIB) and supplemental security income benefits (SSI) on August 4, 2014, alleging disability as of July 3, 2014. [TR 286-94]. Helton alleged disability due to having her left kidney removed, recurring kidney stones, recurring kidney infections, irritable bowel syndrome, and high blood pressure. [TR 306].

Helton's medical records indicate that she has suffered from headaches.[1] For instance, on October 22, 2014, Halton was treated

---

[1] While Helton references multiple medical conditions in her memorandum in support of her motion for summary judgment [See DE 12-1], Helton's challenge to the Commissioner's decision focuses on the ALJ's assessment of her persistent headaches and diabetes. As a result, only medical evidence relevant to Helton's headaches and diabetes is discussed here.

2

by a physician assistant, Lora Conley, for headaches. [TR 588]. Helton's medical records report symptoms of a left parietal headache, facial pain, throbbing, and blurred vision in the left eye. [TR 581, 588]. Initially, Helton was given a Toradol (ketorolac tromethamine) injection to treat her headache. [TR 589]. At a follow-up appointment on November 11, 2014, Helton reported that the injection had helped temporarily but that the headaches had returned. [TR 581]. Additionally, Helton reported that she had suffered from intermittent headaches for fives years but that she had suffered from daily headaches for one week that had increased in intensity. [*Id.*]. Helton's treatment with Conley also indicate a history of diabetes. [TR 564, 581].

Subsequent treatment records indicate that Helton was treated for headaches and symptoms associated with sinusitis. [*See, e.g.*, TR 568-79]. On April 14, 2015, Helton was treated for headaches by Dr. Duane Densler at the Pikeville Medical Center. [TR 614-17]. Dr. Densler found no evidence of cerebellar ectopia and possible carotid siphon aneurysm. [TR 616]. Dr. Densler recommended an evaluation at the University of Kentucky or a similar medical facility so that a catheter-based angiography could be performed. [*Id.*]. Still, Dr. Densler reported that Helton's orientation, memory, cranial nerves, balance, coordination, and fine motor skills were all normal. [*Id.*].

Subsequently, MRIs were conducted, finding a right carotid aneurysm and a neurovascular radiology consult was recommended. [Tr 620]. Additionally, medical records submitted by Dr. Mark Caruso, Helton's primary care physician, indicate a treatment history for headaches and diabetes, among other medical conditions. [TR 646-724].[2]

On November 7, 2016, Helton was treated by an endocrinologist, Dr. Hazel Yang for type II diabetes. [TR 747-58]. Dr. Yang's treatment notes indicate that Helton had suffered from diabetes for about two years and that symptoms of excessive thirst (polydipsia), excessive urination (polyuria), and excess glucose in the blood stream (hyperglycemia) were worsening. [TR 747].

Furthermore, Helton was treated by the UK Healthcare Neuroscience Institute for a right periophthalmic aneurysm. [TR 771-85]. Treatment records from a January 29, 2016, appointment explain that while Helton had "some subjective numbness over her distal upper and lower extremities," Helton had no cranial nerve deficits and good strength throughout. [TR 771].

Helton's applications for benefits were denied initially on November 12, 2014. [TR 215-18]. Helton's applications were also

---

[2] Medical records indicate that Helton was also treated by a physician assistant, Amanda Blackburn. [Se TR 646-57]. The Court makes no distinction between the medical records signed by Dr. Caruso and Ms. Blackburn because it appears that Blackburn worked in the same office as Dr. Caruso and treated patients under Dr. Caruso's direct supervision.

4

denied on reconsideration on February 27, 2015. [TR 223-36]. Subsequently, Helton appeared at an administrative hearing in front of ALJ L. Raquel Bailey Smith. [TR 146-74]. Helton was represented by an attorney at the hearing.

At the hearing, Helton reported that she stopped working due to a medical condition involving her kidney, which required surgery. [TR 154]. Helton also reported issues with uncontrolled diabetes and explained that she took prescription medications Trulicity and Humalog Mix 50-50. [TR 154-55]. Furthermore, Helton testified that she was unable to work due to numbness in her hands and pain in her legs caused by her diabetes. [TR 160]. The ALJ asked Helton, "[o]ther than [diabetes], do you believe anything else keeps you from working?" [TR 160]. Helton replied, "No." [*Id.*].

Additionally, Helton testified that she suffers from tension headaches that cause nausea. [TR 169]. Helton explained that she experienced one tension headache per week lasting approximately two hours but that she did not take any medication for her headaches. [TR 170].

A vocational expert also testified at the hearing. The vocational expert explained that Helton had worked as a taxi driver. [Tr 171]. The ALJ posed hypotheticals to the vocational expert. [TR 171-73].

The ALJ issued an unfavorable decision on March 15, 2017. [TR 99-111]. The ALJ found that Helton suffered from the following severe impairments: mild osteoarthritis of the left hip, mild degenerative disc disease of the lumbar spine, obesity, and diabetes mellitus. [TR 101]. The ALJ found that Helton's periophthalmic aneurysm was not a severe impairment. [TR 101].

At step four, the ALJ discussed Helton's diabetes and associated symptoms. [*See* TR 104-05]. Additionally, the ALJ discussed Helton's previous treatments for headaches and diabetes while reviewing the medical evidence. [TR 104-09]. Ultimately, the ALJ found that the objective medical evidence did not support Helton's assessment of the severity of her symptoms. [TR 108].

Additionally, the ALJ found that Helton had the residual function capacity to perform light work and found that Helton could not perform past relevant work but that there were jobs that exited in significant numbers in the national economy that Helton could perform. [TR 104-10]. As a result, the ALJ found that Helton was not disabled within the meaning of the Social Security Act. [TR 110].

The Appeals Council denied review on November 30, 2017. [TR 1-7]. Having exhausted her administrative remedies, Helton filed this action on January 23, 2018. [DE 1]. Pursuant to the Court's Standing Scheduling Order [DE 11], Helton moved for summary judgment on June 7, 2018, [DE 12] and the Commissioner moved for

6

summary judgment on July 6, 2018 [DE 14]. As a result, this matter is ripe for review.

### III. Standard of Review

"The plaintiff has the ultimate burden to establish entitlement to benefits by proving the existence of a disability . . . ." *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). When reviewing the ALJ's ruling, this Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Ulman v. Comm'r of Soc. Sec*, 693 F.3d 709, 713 (6th Cir. 2012). This Court determines only whether the ALJ's ruling is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court is to affirm the decision, provided it is supported by substantial evidence, even if this Court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### IV. Analysis

Helton raises three main issues in this lawsuit. First, Helton argues that the ALJ erred at step two of the sequential analysis by failing to consider Helton's headaches as a severe

7

impairment. Second, Helton asserts that the ALJ erred by failing to appropriately assess Helton's diabetes and headaches when assessing residual function capacity. Third, Helton claims that the hypotheticals presented to the vocational expert during the administrative hearing failed to accurately describe Helton's impairments and limitations.

**A. Whether the ALJ Erred by Failing to Consider Helton's Headaches at Step Two of the Sequential Analysis**

First, Helton argues that the ALJ erred by failing to consider whether her headaches were a severe impairment at step two of the sequential evaluation. [See DE 12-1 at 8-11, Page ID # 1016-19]. But, the ALJ's decision and analysis should be read as a whole. *See Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012); *Athey v. Comm'r of Soc. Sec.*, No. 13-cv-12529, 2014 WL 4537317, at *3-4 (E.D. Mich. Sept. 11, 2014).

Helton's contention that the ALJ failed to consider her headaches is not supported by review of the ALJ's entire written decision. First, the ALJ explicitly mentioned Helton's aneurysm in her step two analysis. [TR 101]. More importantly, the ALJ expressly considered Helton's weekly migraine headaches at step four of the sequential analysis. [TR 104-05]. In fact, the ALJ noted that "on December 15, 2014, [Helton] reported her headache symptoms improved with medications." [TR 106]. The ALJ also

reviewed medical records from Helton's primary care physician, Dr. Caruso, which noted treatment for headaches. [*Id.*].

Helton asserts that "[her] testimony, four medical providers, and three objective abnormal scans all support that Ms. Helton's headaches significantly limit[] her ability to perform work related activities. [DE 12-1 at 11, Page ID 1019]. But the record evidence is not as clear as Helton claims. The objective medical evidence does demonstrate that Helton complained of persistent headaches and associated symptoms. Still, on November 10, 2014, Helton reported that she had suffered from intermittent headaches for five years. [TR 381]. Thus, even if Helton's headaches had increased in intensity and frequency, there was some period of time where Helton worked while suffering from intermittent headaches.

Additionally, the medical evidence reflects a conservative treatment plan for Helton's headaches. At the administrative hearing, Helton testified that she had not been prescribed any medication to treat her headaches. [TR 170]. Furthermore, the medical evidence suggests that Helton only received one Toradol injection to treat her headaches and that it did help some, even though her symptoms returned. [TR 581, 589].

Moreover, testimony from the administrative hearing suggests that Helton's headaches were not one of her more limiting impairments. For instance, at the hearing, Helton testified that

9

symptoms associated with diabetes prevent her from working. [TR 160]. Still, when asked if there were impairments other than her diabetes that prevented her from working, Helton said, "No." [*Id.*]. In fact, Helton's headaches were discussed relatively briefly at the administrative hearing and only after her attorney raised the headaches as a medical issue. [TR 169-70]. Additionally, headaches were not listed as a condition that prevented Helton from working on the Disability Report Form. [*See* TR 306].

Thus, the record evidence is not as clear as Helton suggests. While there may be evidence in the record that suggests her headaches are a severe impairment, there is also evidence to the contrary. If the ALJ's decision is supported by substantial evidence, the Court is not to second-guess that decision, "'even if substantial evidence would support the opposite conclusion.'" *Ulman*, 693 F.3d at 714 (citing *Bass v. Comm'r of Soc. Sec.*, 499 F.3d 506, 509 (6th Cir. 2007)).

Furthermore, even assuming, for the sake of argument, that the ALJ's failure to engage in a more thorough analysis of Helton's headaches at step two is a technical error, that error would be harmless because it is clear, based upon a reading of the entire decision, that the ALJ considered Helton's headaches when making her decision. Remand here would simply require the ALJ to copy

part of her discussion under the step four heading and paste it under the step two heading.

Ultimately, this is not a case where the ALJ completely failed to consider the medical evidence pertaining to Helton's headaches or simply reiterated a perfunctory, unsupported step two finding when considering residual functional capacity. In fact, the opposite is true based upon review of the entire record. The ALJ considered and analyzed the medical evidence pertaining to Helton's headaches at step four, including the medical notes provided by treating sources and the results of relevant examinations. As a result, the ALJ did not commit error and the decision is supported by substantial evidence.

**B. Whether the ALJ Failed to Consider Limitations Associated with Helton's Diabetes and Headaches When Assessing Residual Functional Capacity**

Second, Helton asserts that the ALJ failed to consider physical limitations associated with her diabetes and headaches when assessing residual functional capacity. [DE 12-1 at 11-13, Page Id # 1019-21]. But here, review of the ALJ's written decision indicates that the ALJ did consider Helton's diabetes and headaches.

At step four of the analysis, the ALJ mentioned that Helton testified that she could not work due to "insulin dependent diabetes mellitus," and that "[s]he gets migraine headaches once a week." [TR 104-05]. The ALJ considered "symptoms of . . . high

11

blood sugar[], leg pain and swelling, feet tingling . . . poor energy level, tiredness, fatigue, and concentration difficulties." [TR 104]. In fact, the ALJ noted that Helton "reported having to sit down and elevate her legs because of pain and swelling." [TR 104-05].

Additionally, in addition to considering Helton's subjective complaints, the ALJ also analyzed the objective medical evidence. For instance, the ALJ noted that Helton takes prescription medications for multiple health problems. [TR 105]. Furthermore, the ALJ discussed Helton's medical treatment by Dr. Mark Caruso and Albaree Medical Services. [TR 105-06]. The ALJ noted that Helton was treated for diabetes and headaches by these medical providers. [*Id.*]. Finally, the ALJ considered medical records from endocrinologist, Dr. Hazel Yang. [TR 106].

Still, Helton's main complaint with the ALJ's decision seems to be that the ALJ's residual functional capacity finding did not expressly mention Helton's pain in her extremities and need to raise her legs. But here, the ALJ weighed the subjective and objective record evidence and concluded that Helton's subjective statements concerning the intensity and limiting effects of her conditions were not supported by the evidence. [TR 107-09]. Ultimately, there is substantial evidence in the record to support the ALJ's conclusion that Helton's diabetes did not significantly limit her residual functional capacity.

12

For instance, the ALJ considered Helton's subjective complaints regarding pain but noted that "the medical evidence of record reveal[ed] responsiveness to conservative treatment and medications." [TR 108]. The ALJ expressly considered Helton's "alleged pain, swelling, tingling and drawing in the bilateral upper and lower extremities" but noted that "physical examinations were virtually unremarkable." [TR 108]. The ALJ noted that medical examinations described full range of motion in the extremities and that the medical professionals treating Helton for diabetes had recommended continued management with medication. [TR 106]. Finally, the ALJ considered Helton's activities of daily living and noted that her impairments only resulted in a mild restriction of her daily activities. [TR 108].

Pertaining to headaches, as has been discussed, the ALJ expressly discussed Helton's headaches at step four and analyzed objective medical evidence. [See TR 104-07]. Additionally, the ALJ had good reasons for finding that Helton's headaches were not a severe impairment and did not limit her residual functional capacity, noting the conservative treatment plan for Helton's headaches. [*See supra* Section IV(A); *see also* TR 170, 581, 589].

Of course, Helton clearly disagrees with the ALJ's conclusion. But just because a condition is found to be severe at step two does not necessitate a finding that said condition limits the claimant's residual functional capacity. The ALJ considers

13

residual function capacity between steps three and four of the sequential analysis to determine "the most [a claimant] can still do despite [her] impairments."  20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1), (5).  The ALJ is required to assess residual function capacity "based on all of the relevant medical and other evidence."  20 C.F.R. § 404.1545(a)(3).  The ALJ is required to consider all medically determinable impairments, both severe and non-severe, in determining residual function capacity.  20 C.F.R.§ 404.1545(a)(2).

This Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility."  *Ulman*, 693 F.3d at 713.  Here, the ALJ considered all of Helton's impairments, both severe and non-severe, and analyzed the record evidence.  As a result, the ALJ's conclusion is supported by substantial evidence and must be affirmed.

**C. Whether the ALJ Erred by Failing to Account for Limitations Imposed by Helton's Headaches and Diabetes in a Hypothetical Directed to the Vocational Expert**

Third, Helton claims that the ALJ erred by failing to included certain limitations caused by Helton's headaches and diabetes in hypotheticals posed to the vocational expert.  [DE 12-1 at 13-14, Page ID # 1021-22].  But Helton's complaint here is largely a replication of her first and second arguments.

The only new contention raised by Helton is that the ALJ failed to adequately include limitations caused by her headaches

14

and diabetes in hypotheticals posed to the vocational expert. Helton cites *Howard v. Commissioner of Social Security* for the proposition that a hypothetical question posed to a vocational expert must accurately portray the claimant's physical and mental impairments in order to be supported by substantial evidence. *See* 276 F.3d 235, 241. *Howard* is informative, but it is not dispositive in this case.

In *Howard*, the ALJ found that the claimant suffered from multiple diseases but failed to include symptoms from these diseases. *See Howard*, 276 F.3d at 241. The Court found that the ALJ's hypotheticals did not adequately portray the claimant's physical and mental state based on the objective medical evidence. *See id.*

Subsequently, the Sixth Circuit has clarified that the language Helton relies upon was not part of the holding in *Howard*. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631-33 (6th Cir. 2004). The main holding in *Howard* was that the ALJ improperly calculated the claimant's residual functional capacity, not that the ALJ failed to include all the claimant's medical conditions in hypotheticals posed to the vocational expert. *See id.* at 631-32.

In fact, the Sixth Circuit explained that if the language in *Howard* was interpreted to require an ALJ to expressly list a claimant's medical conditions when presenting a hypothetical, that the holding would interfere with prior decisions. *Id.* at 633.

For instance, previous holdings found that "a hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions. *Id.* (citing *Foster v. Halter*, 279 F.3d 348, 356 (6th Cir. 2001)). Additionally, "a vocational expert need only 'take[] into account plaintiff's limitation.'" *Id.* (alterations in original) (quoting *Varley v. Sec'y of Health & Human Servs.*, 820 F.3d 777, 780 (6th Cir. 1987)).

Ultimately, when presenting a hypothetical to a vocational expert, an ALJ is not required to list or expressly mention a claimant's medical conditions. *Howard*, 368 F.3d at 631-33. Additionally, "[i]t is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Here, as was previously discussed, the ALJ's findings pertaining to the severity of Helton's headaches and residual functional capacity are supported by substantial evidence. [*See supra* Sections IV(A)-(B)]. The ALJ had good reasons to discredit Helton's subjective complaints regarding limitations imposed by her headaches and diabetes. As a result, the ALJ was not required to list these conditions or the alleged limitations imposed by them when presenting a hypothetical to the vocational expert.

## V. Conclusion

Having found no legal error on the part of the ALJ and that the decision is supported by substantial evidence, the Acting Commissioner's final decision is **AFFIRMED**.

Accordingly, it is hereby **ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment [DE 12] is **DENIED**;

(2) Defendant's Motion for Summary Judgment [DE 14] is **GRANTED**;

(3) Judgment in favor of the Defendant will be entered contemporaneously herewith.

This the 14th day of November, 2018.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge